We'll hear Weiss v. Eric Nelson, Engineering. Counsel. Your Honors, my name is Luther Snavely. I represent Harry M. Weiss & Associates. The lower court should be reversed because the Nelsons were unjustly enriched at the Weiss law firm's expense and because justice and equity require that the Nelsons share their 3% commission. Counsel, I had problems understanding that. One thing that occurred to me is, in order to show even if all the substantive grounds for an unjust enrichment claim were there, I can't see where any amount was proven. Ordinarily, in an unjust enrichment claim, there would be proof along the lines of, well, even though I didn't have a contract that was breached, nevertheless, my work was worth X dollars, and they should give me what my work was worth. Here, he didn't prove his time and his hours or anything else that would show how much his work was worth to Eric Nelson, even assuming that it was worth something to Eric Nelson. Well, the agreement was that he would receive 1%. No, no, there was no agreement. That's why we're talking unjust enrichment. But when he appeared and he was he believed he was acting as a broker, he was functioning as a broker, he didn't act or function as a broker because he didn't have a license via crime. But he was acting, he was doing the same things that a broker would do. You came in here and you said, I'm entitled to what a lawyer would have gotten paid to do it. Well, it's crime to practice law without a license or to practice real estate brokering without a license. But what he did, the customary practice was for him to receive a percentage of that commission, in this case 1%. No, it was customary for real estate brokers who brought their clients to the auction to get 1%. Right, and in peri delicto normally prohibits an agreement from being enforced which is in contravention of a state statute, but there is an exception in Nevada through the McGill case which adopted the holding of the Norwood v. Judd case out of California. Look, we've got away from my original confusion. I think it's already established he's not entitled to recover on the contract. That's correct, Your Honor. All that was remanded is the restitution remedy for unjust enrichment. And I asked, how much? What proof is there of how much? And all you've referred me to is the contract price. Well, I don't think that, first of all, the bankruptcy court just didn't evaluate at all. Did you present any proof? Well, I don't think that his payment here should be based on how many dollars an hour and how many hours he worked. He delivered the successful bidder. Without the bidder, which Mr. Weiss delivered, the Nelsons wouldn't have even received the commission at all. That I don't see. I think the reason that, if I understood this record right, the reason that real estate brokers get the 1% is that the auctioneer does better if real estate brokers drag their clients down to an auction. However, the purpose of Weiss coming to the auction was to hold the price down instead of running it up. The real estate broker actually has an interest in running it up. Well, actually, Weiss's job was to be a lawyer for an undisclosed principal in order to keep it down. But actually, in this case, the second highest bidder was a credit bidder. And under the terms of the auction, if a credit bidder wins the auction, then the Nelsons would have received no commission at all. The only reason they got this $1.25 million windfall at all was because of what Weiss did, because of Weiss's participation, him bringing ICON into the picture. And also, he wasn't just acting as an assistant to ICON. I think it's important to point out that during the course of this, he was required, the Weiss law firm was required, to cut a check to the Nelsons for $3.8 million on their own account. And according to the testimony of the Nelsons themselves, they forced the Weiss law firm to essentially execute all of the purchase agreements as the principal, which means that if Carl ICON had backed out at the very last second, the Weiss law firm would have been on the hook for millions and millions of dollars. I recall a case in restitution. It was either from law school or my bar study in Massachusetts. They had very strict contract law there. Somebody had built a hotel. Everything was great, except they couldn't get the doorknobs that the contract called for, so they used some other doorknob. Massachusetts said, you can't recover on the contract, but you can recover for unjust enrichment. And what that was, was evaluation of the builder's services based on what builders charge for that sort of thing. Now, to make that analogous here, I think you'd want us to use the evaluation of mortgage broker services based on what mortgage brokers charge for that sort of thing. The problem with the analogy is Weiss isn't a mortgage broker. No, but he's a mortgage broker. I just mean real estate broker. But to pay Weiss for a certain number of dollars per hour for the time he put in on making this happen would still leave the Nelsons unjustly enriched. The whole point of the McGill case which adopted the Norwood v. Judd Why unjustly? Well, because it still leaves them unjustly enriched because what the Norwood v. Judd court did was it involved, first of all, it came from a lower court case where there were parties that required a contractor's license to perform transactions. The plaintiff didn't have one. The lower court ruled against the plaintiffs saying that he had unclean hands because he had violated California statute. The higher court in Norwood said no, unjust enrichment of the defendant should not be allowed unless compelling principles of justice and equity require it. And they fashioned a four-part balancing test to determine on the whole whether the plaintiff really had unclean hands. And the court instructed that the factors which should be balanced in determining whether the plaintiff should recover, even if the agreement is in violation of state statute, is whether the public can no longer be protected because the transaction has already occurred, there's no serious moral turpitude, the defendant has the greater moral fault, and unjust enrichment. And it's a balancing test. The plaintiff isn't necessarily required to establish all four elements, and it's up to the court to weigh the different elements. What is the moral fault of Eric Nelson and auctioneers? Well, the moral fault of Eric Nelson is that they allowed the Weiss law firm to basically they put a gun to the Weiss law firm's head. They said,   or you execute everything as a principle. Put up this money, make yourself liable for millions of dollars, or else this sale isn't going to go through. You know, Weiss --" Are you talking about after the auction, when I thought that was the title company who wouldn't allow them to change the document? Well, I mean, before the auction, we've got these findings by the bankruptcy court, neither the Nelsons nor ENA did anything to induce Weiss to participate or bid or to lead him to believe he would be entitled to a commission. And so we would need to say that that was a clearly erroneous finding. We have this finding by the bankruptcy court saying that the Nelsons didn't do anything to induce Weiss to participate or bid or to lead him to believe he would be entitled to a commission. That's right, and it was Harry Weiss' testimony that he did receive assurances from... Right, but now we have a finding by the bankruptcy court. That's right, and the fact of the matter is that the bankruptcy court judge made an adverse credibility finding against Harry Weiss and basically ruled that Harry Weiss was lying and that the Nelsons were telling the truth. And normally, normally this court would give great deference to a credibility finding like that because... It's abnormal about this is that the bankruptcy court judge didn't apparently, from the language of the decision, didn't base her credibility finding on any aspect of the demeanor of the witnesses. There's no reference in the decision to how did the witnesses look, were they angry, were they stuttering, did they have trouble remembering? It's just all she heard  and decided, okay, well, I think this one makes sense to me. And in that respect, she has no more of an advantage in evaluating the credibility of the witnesses than this court does. You're both in possession of the same record. And the Nelsons' testimony is implausible because if the Nelsons are telling the truth, then Weiss was willing to give up his time and risk financial ruin for no compensation at all. And with so much at stake, it's simply implausible that a man of his age and experience wouldn't have sought and received assurances from the Nelsons. I don't see why it's implausible. Anyone who knows somebody as rich as Carl Icahn and is in a position to do him a favor might find it very worth doing that. Just for his future. Well... He was relying on Mr. Icahn, right? Not on the Nelsons. I don't understand that argument at all. That he was relying on... He signed the document relying on Mr. Icahn to make good on the bid and why that certainly seems reasonable. So I don't understand your argument on that point at all. Because if Icahn had backed out, if Icahn had changed his mind, Weiss would have been on the hook for the whole thing. Right. But who was he relying on? The Nelsons or Mr. Icahn? Well, I think he was relying on both. His long friendship with Mr. Icahn that led him to take this undercover, I guess, role. Well, I think he was relying on both. I mean, he was certainly... relying on Mr. Icahn not to pull the rug out from under him. But he also testified that he relied on the Nelsons that he would receive the 1 percent commission if his client was the highest bidder. Well, under Rule 52, if a fact finder makes a finding says, I believe Nelson is the burden on the other side, prove that that's clearly erroneous? Well, I think that, again, since the Bankruptcy Court judges evaluation of credibility wasn't based on demeanor at all, I think that any... How do we know? Well, because she didn't say anything about it in the decision. Do we require it to be stated in the decision outside of the immigration context? If you don't, then how do you know whether the judge did or didn't? Why does demeanor even matter? I mean, sometimes if you're a fact finder, you look at the person testifying and you say, this person seems totally honest, but what they say makes no sense in terms of the way things ordinarily are. Or, this person seems totally honest, but the documents prove the exact opposite of what this person said. I don't understand. You're telling us ignore everything else and just look at and reverse a finding of fact on credibility because the finder did not comment on demeanor? Is that your position? And also because she apparently didn't examine the motivations of the different parties. She didn't examine whether it makes sense for Mr. Wise to have acted as he did without the assurances. It makes perfect sense. One of the richest men in the world asks me to be an agent for him as an undisclosed principal so the price doesn't get run up because the other bidders and the shills and the auctioneer all know who's bidding. It makes perfect sense to do that and to take your chances. And it even makes sense to gamble on 1% of the auction price, which would be, I think, 400-some thousand dollars, instead of irritating my client by sending him a bill for maybe $10,000 for an hours times rate. I respectfully disagree, Your Honor. I don't think it's plausible for someone to go in with no assurance whatsoever that they're going to be compensated and to put their law firm that they spent their whole life building up on the line. Some people have been friends from kindergarten. Icahn's not going to let them down and let them get ruined by this. But also what I don't understand is even if he got the commission, he's still on the hook for the rest of the purchase price. So that's irrelevant whether he got the commission or not. He still has his law firm on the hook if Mr. Icahn backs out. So I guess I'm still having trouble with that argument. But if Icahn had not backed out, then he would be the one who buys the property, and so Weiss wouldn't be on the hook for it. If he backs out, then Icahn isn't buying the property, and Weiss is on the hook for it. Right. So the commission is sort of irrelevant in the latter scenario. Well, it's irrelevant to Carl Icahn. It wasn't irrelevant to Harry Weiss because he... I thought this is how Agents for Undisclosed Principles always did it. The agent is liable to the third party, and the agent has an agreement with his principal that he's willing to put his confidence in. His principal won't leave him hanging out there. I don't know how Disneyland buys property or big movie studios buy property when Ted Turner buys Montana. That's how they do it, isn't it? I honestly don't know how anyone else does it, Your Honor. That's not on the record. I think it's the law of agency, isn't it, that the third party has an action against the agent for the undisclosed principle? The third party and the agent for the undisclosed principle sign something to that effect or not? It's common law. Still, Mr. Weiss did confer the benefit on the Nelsons, and I think that it's unjust to allow them to keep the 1 percent that should have gone to Mr. Weiss for giving them this whole windfall in the first place. Thank you, Counsel. Thank you, Your Honors. It's the same deal as the others. You've used up all your time, but be prepared in case you have 30 seconds of rebuttal. If it pleases the Court, Gerald Gordon, Gordon Silver, on behalf of the appellee. As the Court has summarized already, after two days of trial, after the Court submitting declarations, hearing live testimony from Mr. Weiss, from Mr. Nelson, Ms. Nelson,  has submitted a written testimony. The Court entered lengthy findings and conclusions determining that Mr. Weiss had not established unjust enrichment. The Court has asked questions in the opening, but that is going to what I think is really the core matter here, and I'd like to address and come back to some of the facts that the Court found, for the most part, were undisputed. And that is, under the McGill case and then the Beggs case later on, there is an exception to the prohibitions under Nevada law that an unlicensed contractor or an unlicensed real estate agent is barred from receiving a fee for commission. And that is if the party is able to show unjust enrichment. But there is an underlying premise in both those instances, and that is, one, that the contractor performed. Contractor to contract, the contractor performed. In McGill, the contractor performed. There was no allocation. Kennedy, that's always true. You get some unjust enrichment cases where it was only partially performed. That's correct. Partial performance, yes. But there's still a level of performance or there is, let's do the contrary. There's not a defense that he didn't perform. In the Weiss, in the contractor case, as we point out, in the Beggs case, which followed in line with, from McGill, and then in the Morrow case, and then in the I keep thinking of Levy, but it's versus Levy. I know the Levies, so that's why I keep thinking of it. But whatever that case is. In that, in both those cases, they said, okay, you're entitled to, you can receive the commission as a real estate agent. But there's something that is underlying fundamental to that. And that is that that individual was the procuring cost. That's the reason you're entitled to a commission in the first place. You're the procuring cost. And what is procuring cost? We know that the courts have defined in a somewhat amorphous, but Mr. Weiss had the burden of establishing that he set in motion a chain of events which led to the closing. And that's also cited in the Kerrigan case, again in the Morrow case, and in the Atwell case. The court specifically found that Mr. Weiss was not the procuring cost. He was ministerial. He was not the reason for it. And as we know, in the normal real estate case, the agent finds a buyer, takes the buyer to the property, introduces the buyer to the property, introduces the buyer to the seller, and then goes through the closing. That's not what happened here. Didn't the court identify that as a legal finding, not as a legal holding? No. No. It found that, as a matter of fact, he was not the procuring cost. Those are factual determinations. And the facts that underlie that I'm not sure that that's so critical. A lot of brokers aren't. Somebody's selling their house. You want to buy their house. Often they send you to a broker. The broker doesn't do a thing. You've already picked the house out. And the broker gets his 6 percent. Yes. And sometimes what I do is when I bought a house, the same as I will go to a broker and I'll acquire the broker, I'll say, look, I found some houses and I've kind of done my own work and take that broker. But in that case, still the broker is part of the deal. The broker is acting as a broker. Mr. Weiss acted as a buyer. Mr. Icahn found the property. It was submitted to his people at the Stratosphere, which he owned, Mr. Lucero, Mr. Cassell. They looked at it. They inquired of Mr. Nelson or Ms. Nelson for information. They got packages. Mr. Icahn, two days before the sale, contacts Mr. Weiss and says, Mr. Weiss, you're an old friend of mine. They've been together for years. I want you to act as my shill. I want you to act as my straw man. Well, he wasn't a shill. A shill is a phony bidder. The auctioneer is a shill in the audience to run up the bids. He was an agent for a nondisclosed. He was an agent for a nondisclosed. I can't do that at every Sotheby's art auction. Absolutely. I don't I'm fearful that if my name is known, that there's going to be other buyers and they're going to run up the price. So I want you to go and I want you to sign on as the buyer, which he did. He decides in his own mind, well, I'm going to do that, but I'm still entitled to a commission because I checked Nevada law and I'm okay. He was wrong. Okay? So he goes as a buyer. He gets the package. He never discloses at this time or signs on or does anything required as a broker. He shows up at the sale. He had not advised Mr. Icahn about the property. He had never seen the property. He had not had any information about values or anything else. He shows up. He signs as a buyer, qualifies as a buyer, hands the $500,000 check, which goes to escrow, and hands a blank check on his own account. Had a lot of money. He hands a blank check, which will be filled in for 10% of the purchase price. He then proceeds to raise the mission and sign below as a broker, but the conversation is, we're registering buyers. And someone said to him, Ms. Nelson said, hey, if you are a broker, if you qualify as a broker, well, you get the fee. She doesn't know. She said I had none of the documents there. I didn't know who qualified. I didn't know any of that. We're registering buyers. He proceeds through the sale. And most importantly, after he's on the phone with Mr. Icahn, he's putting the bids in for Mr. Icahn, as Mr. Icahn wishes. They close the sale. And remember, there's a blowout. There's an additional piece of property right next door where there's an RV park. And that had a fixed price of $8 million. And the idea was, if you buy at the auction and you're successful, you can buy the blowout. Mr. Weiss doesn't advise Mr. Icahn as to buying the blowout piece. He puts Mr. Nelson on the phone. And Mr. Nelson advises Mr. Icahn, yes, you really should buy this piece of property. It's integral to the property. To which Mr. Icahn says yes. They go in. He then signs and then raises the issue. There's a bunch of controversy and disputed facts. The Court makes findings and says, you were not the procuring cost. You're ministerial. You were the buyer. You represented Mr. Icahn undisclosed. That's it. He was not the procuring cost. So from the very beginning, he never established the fact that he was entitled to the commission at all. Now, the Court pointed out in the opening that he presented no evidence as a reasonable value. He was at what was reasonable value. He didn't. And the Court so found. Two hours? Three hours' worth of time? Would that be it? As an attorney, that's really what he was doing. I don't know. But he didn't present it. And the Court found that you're not entitled to the commission. The Court found. Did he put in any evidence at all? I'm skeptical that it would only be two or three hours, getting shaken out of bed by your old Cub Scout friend, flying across the country and going through all this. It seems to me it would be a better part of a week and a fair amount of money. But it looked to me like he didn't prove any of it. Is that true? But remember something. The reason, and you're right, there's no evidence. I'm just arguing that and purporting it. And I apologize if I misled the Court. But the basis in which you get there is the sale was the morning of the 26th. He didn't get the phone call from Mr. Icahn until the afternoon of the 24th. He then goes on the 24th, picks up the package. I would charge a client more if he made me fly all night on short notice. Especially with Mr. Icahn. We don't have any evidence. Is there any evidence that he put in of what his time he took? No, nothing. Any other evidence that he put in of what he ordinarily charges for this sort of work? Nothing. He did not go on that basis. Nor did he present any evidence as to how much time his law clerk or his attorney spent in his office giving him the wrong advice on the matter of law that he qualified. Nothing. And then he shows up at the sale. So he just gambled on getting the one. What I'm getting at is  I had the impression that he put in no evidence and just gambled on getting the one percent instead of shooting for the value of his time and hours. Absolutely correct. That is true. Correct. So where we have is, is that we have an individual who isn't entitled to it, shows up at the buyer, is acting for a friend or a client, and then decides, has the PAC, knows what's required, relies falsely on his own evidence, on his own beliefs that he qualifies somehow, and then pursues subsequently to get a commission on the basis of unjust enrichment and the exception. Nothing here was established that would support it. None of the findings of the Court were in his favor. The Court found specifically against him. And there's no evidence, no record before this Court that shows that the Court was clearly erroneous in its finding facts. I have nothing else to submit unless the Court has any questions. Thank you, counsel. Thank you. Go ahead and take 30 seconds if you wish to. Thank you, Your Honor. As to the issue of procuring cause, that's the Kerrigan case. The Kerrigan case says, talks about whether the, says, the Kerrigan case says that the broker or the person acting like a broker has to engage in efforts that are substantially more than merely trifling. And I'll just come back to what I've said before. This sale would not have occurred without Weiss. I think that in that aspect, he was certainly one of the procuring causes of the sale. And I don't see why he's any less of a procuring cause than a real estate broker. If I'm looking, if I want to buy a house, I'm looking for a new house, I call the real estate broker. The real estate broker doesn't call me out of the blue one day and say, hey, Luther, are you looking for, do you feel like this is a good time to buy a new house? I don't think he's required, I don't think Weiss is required by this entire chain of events in motion. He just has to be there and help it happen. I don't see why Mr. Weiss's activity here is any more ministerial than any other broker, or than a broker where a buyer buys a property sight unseen. If the buyer buys a property sight unseen, and the broker, and he has a broker, should the broker not receive the usual compensation? I think he should. And if Your Honors have no more questions, I'll wrap up. Thank you, Counsel. Thank you, Your Honors. Have a good day. Weiss v. Nelson Auctioneering is submitted. We are adjourned for the day.
judges: Goodwin, Kleinfeld, Ikuta